MILLER (INDIANA v.). See Case No. 7,022.

---

## Case No. 9,575.

### MILLER v. JONES.

[Nowhere reported; opinion not now accessible.]

---

MILLER (JONES v.). See Case No. 7,482.

---

## Case No. 9,576.

### MILLER v. JONES.

[15 N. B. R. 150.] [1]

Circuit Court, D. New Jersey. Sept. 27, 1876.

APPEAL—MOTION FOR NON-SUIT—FRAUD IN LAW—HOW DETERMINED — CHATTEL MORTGAGE—POSSESSION—UNRECORDED BANKRUPTCY—RIGHTS OF ASSIGNEE.

1. A denial of a motion for a non-suit is not reviewable in error.

2. Whether an instrument is of itself a fraud in law is a question that must be determined from the instrument alone.

[Cited in Re Bloom, Case No. 1,557.]

[Cited in Lister v. Simpson, 38 N. J. Eq. 446.]

3. The existence of a collateral understanding adverse to or different from a written instrument is a fact that must be found by a jury.

[Cited in Argall v. Seymour, 48 Fed. 549; Etheridge v. Sperry, 139 U. S. 278, 11 Sup. Ct. 569.]

4. Under the laws of New Jersey, a chattel mortgage is good against subsequent creditors from the time of filing.

5. A statement which notifies creditors of the extent of the mortgagee's lien is sufficient to accompany the refiling of the mortgage.

[Cited in brief in St. Louis Drug Co. v. Robinson, 81 Mo. 19.]

6. An assignee has the rights of a judgment creditor as against a chattel mortgage not properly recorded.

[Cited in Cady v. Whaling, Case No. 2,285; Re Gurney, Id. 5,873; Lloyd v. Hoo Sue, Id. 8,432; Re Werner, Id. 17,416; Adams v. Merchants' Nat. Bank, 2 Fed. 180.]

---

[1] [Reprinted by permission.]

7. An assignee cannot recover the value of the property covered by a mortgagee if the mortgagee took possession before the commencement of the proceedings in bankruptcy, although the mortgage was not properly recorded.

[Cited in Re Gurney, Case No. 5,873; Argall v. Seymour, 48 Fed. 549.]

[Error to the district court of the United States for the district of New Jersey.]

Kauffman & Hauck by their chattel mortgage dated December 1st, 1871, mortgaged to David Jones certain chattels, being the ordinary goods and chattels connected with the brewery, including lager beer then manufactured, to secure the payment of a then present indebtedness of thirteen thousand nine hundred and sixteen dollars, "or thereabouts." In the schedule affixed to the mortgage was this clause: "Also all personal property whatsoever of every nature, name and kind not above enumerated, except the books of account and evidence of debt belonging to said Kauffman & Hauck, at said brewery, whether included by name in this schedule or not, of whatever said personal property may or shall consist, and whether said personal property is now on and at said brewery premises, or whether the same shall be placed there during the time the said money mentioned in said mortgage and every part and parcel thereof shall be and remain unpaid." The mortgage was given to secure "Upon demand, all present indebtedness now due, owing, and accruing from said party of the first part to said David Jones, or which may at any time hereafter be due, owing, and accruing from the said party of the first part to the said David Jones, up to the amount in all of fifteen thousand dollars, and not exceeding that amount," with interest. The mortgage was acknowledged January 5th, 1872. Filed January 11th, 1872; refiled November 30th, 1872, and November 29th, 1873. On the 13th of August, 1874, the mortgagee took possession of the mortgaged premises and sold them upon due notice. The mortgagors were adjudicated bankrupts in December, 1874, and an action of trover and conversion was brought by [E. N. Miller] the assignee of the bankrupts to recover the value of the mortgaged premises sold by the mortgagee.

J. Whitehead and T. N. McCarter, for appellant.

C. Borcherling and A. Q. Keasbey, for appellee.

STRONG, Circuit Justice. There is nothing in this record, so far as it is exhibited to me, which exhibits a foundation for any of the errors assigned, except those which relate to the opinion of the court upon the reserved question. I need hardly say that a denial of a motion for a non-suit is not reviewable in error. Nothing was submitted to the jury at the trial except the two questions, what was the value of the goods in controversy, and whether the chattel mortgage under which Jones acquired the possession of the property was fraudulent in fact. No verdict was returned upon the last. The court reserved the question whether the mortgage was fraudulent in law, and allowed each party to turn the case into a bill of exceptions, that the finding on the question reserved might be reviewed by writ of error, in the same manner as if the conclusions of the court had been delivered as a charge to the jury, subject to exception. I am therefore to treat the opinion of the court, upon the reserved question, as a charge to the jury, to which exception was duly taken, and I am justified in assuming that the mortgage was not fraudulent in fact. The learned judge of the district court held that it was fraudulent in law, and ordered judgment for the plaintiff for several reasons, but principally on the supposed authority of Robinson v. Elliott, 22 Wall. [89 U. S.] 513. That was the case of a chattel mortgage of goods in a retail store, given to secure the payment of a series of notes. It contained the following provision: "And it is hereby expressly agreed that until default shall be made in the payment of some one of said notes, or some paper in renewal thereof, the parties of the first part, (the mortgagors), may remain in possession of said goods, wares, and merchandise, and may sell the same as heretofore, and supply their places with other goods; and the goods substituted by purchaser for the goods sold shall, upon being put into said store or any other stores in said city, where the same may be put for sale by the said parties of the first part, be subjected to the lien of this mortgage." The instrument then concluded with separate powers to the mortgagors, on default in payment of their respective claims, to seize and sell (not the whole mortgaged property), but a sufficient amount of goods to satisfy the claims. This mortgage was held to be fraudulent in law, and void. There were peculiar circumstances in the case. There was an express stipulation that the mortgagors might deal with mortgaged property as their own; they might sell it and apply the proceeds as they pleased. It can hardly be asserted that there was any covenant to appropriate the proceeds either to the payment of the debt or to the purchase of other goods to be substituted for those sold, as was said by Davis, Justice, in delivering the judgment of the court: "Whatever may have been the motive which actuated the parties to the instrument, it is manifest that the necessary result of what they did was to allow the mortgagors, under cover of the mortgage, to sell the goods as their own and appropriate the proceeds to their own purposes, and this for an indefinite length of time. A mortgage," he added, "which in its terms contemplates such results, besides being no security to the mortgagees, operates in the most effectual manner to ward off other creditors, and where the instrument on its face shows that the legal effect of it is to

delay creditors, the law imputes to it a fraudulent purpose." Robinson v. Elliott [supra] was not intended to rule that the possession of chattels mortgaged might not be retained by the mortgagors, and retained by express agreement of the mortgagee. This was in effect conceded. It was the power given expressly by the mortgagee, to the mortgagors, to dispose of the mortgaged property for their own purposes, which in the judgment of the court stamped the mortgage with legal fraud; it was that which rendered the instrument in the opinion of the court no protection to the mortgagees, while it was a hindrance to other creditors. It has, in many cases, been decided that a mortgage of chattels which permits the mortgagor to remain in possession, and to dispose of the goods in the ordinary course of his business, is not of course fraudulent as 'a matter of law. The English registration acts and those of many of our states have, at least, for their object protection of both the mortgagor and mortgagee, in the retention of possession and use by the former, and this without any wrong to other creditors, for provision is made for notice to them. But the retention of possession by the mortgagor involves necessarily the consumption in a greater or less degree of the thing mortgaged. All personal property is consumed more or less by its use, certainly the use involves a constant depreciation in value. If, therefore, authorized consumption of the chattels mortgaged renders the mortgage in all cases fraudulent in law, it follows that no valid mortgage of chattels can be made which stipulates for continued possession by the mortgagor. Then the registration acts are totally inoperative. But this is nowhere claimed. It was not in Robinson v. Elliott [supra]. It has been held, indeed, in a few states, that a chattel mortgage which stipulates that the mortgagor may continue in possession and sell the goods in the ordinary course of business is constructively fraudulent, but the doctrine is denied in England, in Maine, Massachusetts, Iowa, and Michigan. Hughes v. Cory, 20 Iowa, 399; Gay v. Bidwell, 7 Mich. 519; Abbott v. Goodwin, 20 Me. 408; Mitchell v. Winslow [Case No. 9,673], and substantially in Massachusetts. 82 Mass. [16 Gray] 597; 44 Mass. [3 Metc.] 515; 56 Mass. [2 Cush.] 294; Brett v. Carter [Case No. 1,844].

It is not necessary, however, for me in this case to enter at large upon the discussion of this question, in regard to which it must be admitted there is much diversity of opinion and judgment. In the case I have in hand, the provisions of the mortgage under consideration differ from those of the one in controversy in Robinson v. Elliott. There is no express agreement even that the mortgagors might continue in possession of the chattels mortgaged, though such an agreement may perhaps fairly be implied. But certainly there is no stipulation that the mortgagors might sell or dispose of the chattels mort-

gaged for their own use, or for any purpose at all. On the contrary, it is expressly covenanted by the mortgagors that, "in case default shall be made in the payment of (the debt)," or in case they shall at any time before the day of payment stipulated for, remove said goods and chattels (mortgaged), or any of them, or permit or suffer any legal process against property to be issued against them, etc., the mortgagees might take and carry away the chattels mortgaged and sell them. This, to say the least, is an implied denial of any right in the mortgagors to sell the property for their own uses and purposes. On the face of the mortgage then, there is nothing that expressly or by necessary implication empowers the mortgagors to use the property as their own, or to withdraw it from the mortgage. On the face of the instrument, the property is absolutely pledged to the mortgagee as a security for the payment of the debt due him, and there is only an implied understanding that the possession might be retained until default in payment, or until an attempt should be made to withdraw the property from the operation of the mortgage, coupled with an express negative of a right to sell and deliver the property to others. The case is not then within the words or the reason of the rule asserted in Robinson v. Elliott. The learned district judge noticed this difference between the mortgage in the present case and that in Robinson v. Elliott, but thought it of no importance, because, as he said, through all the years of its existence the mortgaged goods and chattels were continually changing with the knowledge and assent of the mortgagee, and he could not help knowing that such a consequence must necessarily follow the mortgagor's method of carrying on business. There can be no difference, he said, in principle, whether an arrangement between the parties is the result of an open and express contract, revealed to the world, or of a parol secret understanding concealed within their own bosom. This may be true if the parol understanding be an established fact. But when the question is whether an instrument in writing is of itself a fraud in law, the answer must be made in view of the instrument alone. A court cannot call to its aid a presumed or assumed collateral understanding adverse to or differing from the written contract of the parties. The existence or non-existence of such an understanding or argument is a fact, which like other facts must be found by the jury. Certainly must this be so when the conduct of the parties after the mortgage was made is relied upon as proof of the collateral parol understanding. In such a case the fraud or honesty of the attempted transfer of the property is dependent for its proof upon a mingled body of evidence, partly parol and partly written, which of course must go to the jury. I think, therefore, the district court erred in concluding, upon the supposed authority of Robinson v. Elliott, that the mortgage under

consideration in this case was fraudulent in law.

This brings me to the consideration of the question whether the mortgage was in operation against creditors because it was not refiled in accordance with the statutes of the state. It was dated December 1, 1871. It was filed January 8, 1872, refiled November 30, 1872, and a copy was filed November 29, 1873. The statute of New Jersey relative to chattel mortgages enacted March 24, 1864 [Laws N. J. 1864, p. 493], has reference to mortgages unaccompanied by an immediate delivery, followed by an actual and continued change of possession of the things mortgaged, and it declares that every such mortgage shall be void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed as directed in the act. Nixon, Dig. 613. The second section directs where the mortgage shall be filed, but does not prescribe when. It may, however, I think, fairly be inferred that the filing must be before the rights of creditors other than the mortgagees have arisen. The third section enacts that every mortgage filed in pursuance of the act "shall cease to be valid as against the creditors of the person making the same, or against purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days preceding the expiration of the said term of one year a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property therein claimed by him by virtue thereof, shall be again filed," etc. Now if it be assumed that the filing on the 8th of January, 1872, was not within the provisions of the act (which I confess I am unable to see), the filing on the 30th of November, 1872, may be considered as the original filing, and the refiling of November 29, 1873, was in time; both filings are good as against subsequent creditors. Such I understand to have been the opinion of the district judge, and in this he is sustained by authority—with this opinion I concur. But he seems to have thought that the statement which the statute requires to accompany the filing and the refiling was not such as the law required. I agree that a statement is necessary in addition to the filing and refiling, but a statement was made and filed on both occasions. The statement in each case claims the whole amount mentioned in the instrument to be due thereon, and as constituting the interest of the mortgagee at the date of the refiling. Referring to the instrument it appears that the sum mentioned therein as due to the mortgagee was thirteen thousand nine hundred and sixteen dollars or thereabouts, but it recites that a further credit was asked and proposed to be given, so that the entire amount should be fifteen thousand dollars. and not more. The security was therefore intended to cover the amount of fifteen thousand dollars. That

sum the mortgagee was to advance, if he had not already advanced it, and that sum is the only sum spoken of in the mortgage as the "amount" intended to be secured by it. I am inclined to think, therefore, that the statements made when the mortgage was filed were sufficiently specific. They notified all subsequent creditors that the mortgagee had a lien upon the property to the extent of fifteen thousand dollars. I do not, however, consider this very important, for reasons which I will hereafter give; and the district court does not appear to have rested the case upon this point. If it were conceded that the mortgage was void as against other creditors of the mortgagors, it is not to be denied that it was good as between the parties. Creditors might avoid it or disregard it, because it was a fraud on them. It was enabling the mortgagor to hold out to them a false credit, by the possession of chattels which he had owned, but a title to which he had secretly conveyed to another. The fraud consisted in the retention of possession after the right to possession had been conveyed away; hence the recording or registration of chattel mortgages. The object was to render continued possession by the mortgagor legal, by requiring record notice of the mortgagee's rights to be given to all subsequent creditors of the mortgagor or purchasers from him. But when the possession was actually passed to the mortgagee, pursuant to the provisions of the mortgage; when the mortgagor no longer retains the possession, there is no false credit exhibited, and the possession of the mortgagee is not a fraud upon other creditors. No one doubts that in this case Kauffman and Hauck might have actually delivered the chattels to Jones as a security for the debt due him. And had they done so the pledge would have been good, even as against creditors. Until delivery creditors having recovered a judgment might have levied upon the goods, and held them by right superior to that of a pledgee or mortgagee without possession, except so far as he may have been protected by the statute. And I think, notwithstanding some decisions to the contrary, an assignee in bankruptcy of the mortgagors stands in the position of such creditors with equal rights; the adjudication of bankruptcy being equivalent to the recovery of a judgment and a levy—but his rights are no greater. I cannot see that a creditor of Kauffman and Hauck, who may have recovered a judgment against them after Jones, the mortgagee, took possession of the mortgaged chattels, and sold them, would follow the chattels by an execution. The taking possession by the mortgagee would have been no fraud upon such a creditor; not taking possession is the only fraud of which he could complain. How can the assignee in bankruptcy be in any better condition? Long before the adjudication of bankruptcy was made in this case the mortgagee had obtained actual possession of all the mortgaged property and had sold it,

and this under an authority given by the mortgagors some years before the adjudication in bankruptcy, not in virtue of any preference given within four months. The taking possession then was not a fraud against the provisions of the bankrupt act [of 1867 (14 Stat. 517)], and I am therefore unable to see how it was in any aspect a wrong to the creditors or to their representative, the assignee in bankruptcy. In Brown v. Platt, 8 Bosw. 324, wherein a chattel mortgage claimed to be fraudulent in law as against creditors was assailed, Judge Woodruff held the attack to be unavailable, because, before any creditor questioned the validity of the mortgage, the goods were delivered into the actual possession of the mortgagees upon terms securing to them the custody and right of disposition, with authority to apply the proceeds first to the payment of their own debt. A similar doctrine was held in Massachusetts (Mitchell v. Black, 72 Mass. [6 Gray] 100); then it was ruled that one who had advanced money to a merchant to enable him to purchase merchandise, taking as security therefor (pursuant to agreement) bills of sale from the vendor and also from the debtor, assignments of the bills of lading, and had afterwards allowed the debtor to sell some of the goods as if they were his own, might take possession of the goods unsold at the same time, in order to secure his debt, and that such taking possession, though at a time when the debtor is known to himself and the creditors to be insolvent, is effectual. The retention of possession by the debtor was a fraud in law; but as no other creditor's rights had intervened when the assignee of the bills of lading took possession, he was declared to hold rightfully even as against other creditors. Equally in point is Sawyer v. Turpin [91 U. S. 114].

This is all I need say respecting the only question reserved. But, as the case goes back for a new trial, I add a few words upon a subject learnedly discussed by the district judge, and which may be matter of debate at the second trial. The mortgage included not only the personal property of the mortgagors owned by them at the time the instrument was made, but also after-acquired property. Now I agree that at law, after-acquired property cannot be subject of mortgage or sale, at least it must potentially exist and be capable of delivery. The rule, however, is confessedly different in equity. Lunn v. Thornton, 1 Man., G. & S. 379, was an action at law, in which it was held that a grant of goods which are not in existence, or which do not belong to the grantor at the time of executing the deed, is void unless the grantor satisfied the grant by some act done by him; with that view, after he has acquired the property therein, the decision was rested upon the authority in part of the fourteenth rule of Bacon's Maxims: "Licet dispositio de interesse futuro sit inutilis tamen potest fieri declaratio praecedens quae sortiatur effectum interveniente no-

vo actu." But this maxim is a rule of law, not of equity. In Mitchell v. Winslow [Case No. 9,673], Judge Story ruled mortgages of after-acquired chattels to be valid in equity, and the same thing has been decided repeatedly since, both in this country and in England; and in equity, whatever may be the rule in law, there is no necessity for the "novus actus interveniens." Holroyd v. Marshall, 10 H. L. Cas. 191, decided in the house of lords in 1862, is the case of the highest authority. There it was decided, after a thorough review of previous decisions, that the title of a mortgagee of after-acquired personal property was superior to that of an execution-creditor of the mortgagor who had put in his execution after the debt had fallen due, and had been demanded, though possession had never been taken from the mortgagor. See, also, Brett v. Carter [Case No. 1,844]. But if this were not so, what principle of law or equity forbids the creation by a deed, such as a chattel mortgage, of a power to seize the subsequently acquired personal goods of the mortgagor as they may be acquired in satisfaction of the mortgagor's debt? If it be admitted such property does not pass immediately on the execution of the deed, or immediately on its acquisition, why does it not when seized under such a power? In Lunn v. Thornton it was more than intimated that a distinction exists even at law between such a case and a mere mortgage of personalty that might thereafter be acquired. The instrument in that case created no such power. The mortgage in the present case expressly gives power to the mortgagee to take and carry away the goods mortgaged, including the future acquisitions, and to sell the same in satisfaction of the debt. Such a seizure and sale were made before any other creditor interfered or had a right to interfere. I forbear any further discussion of this subject; perhaps I ought not to have said so much as I have said, for no question in regard to it was reserved.

The judgment of the district court is reversed, and a new trial is ordered.