WESLEY MANDEVILLE, as RECEIVER OF THE PROPERTY OF HENRY J. BECK, APPELLANT, v. EDWARD H. AVERY, RESPONDENT, IMPLEADED WITH HENRY J. BECK AND ANOTHER.

*Chattel mortgage which is valid as between mortgagor and mortgagee, but invalid as to other creditors of the mortgagor — rights of such other creditors as against the mortgagee.*

Where the amount of a chattel mortgage, valid as between the mortgagor and the mortgagee and given to secure an honest debt, has been paid out of the mortgaged property, another creditor of such debtor cannot compel the mortgagee to pay back the amount so received by him upon the ground that the mortgage was given with intent to hinder, delay and defraud such latter creditor.

The fact that the execution of a chattel mortgage was not accompanied by an immediate delivery, nor followed by an actual or continued change of possession of the chattels covered thereby, and that it was agreed between the parties that the mortgagor should continue to deal with the mortgaged property and sell the same in the course of business as his own property, and that the said mortgagor did, in fact, so dispose of a part of said property, does not authorize a creditor of the mortgagor, after the debt of the mortgagee has been paid from the proceeds of such mortgage, to sue the mortgagee to recover the amount of the debt so realized by him.

APPEAL by the plaintiff Wesley Mandeville, as receiver, etc., from a judgment, entered in the office of the clerk of the county of Monroe on the 5th day of June, 1889, in favor of the defendant, Edward H. Avery, dismissing the plaintiff's complaint, with costs, after a trial at the Monroe Circuit before the court and a jury.

*David Hays*, for the appellant.

*J. C. & C. I. Avery*, for the respondent.

CORLETT, J.:

The defendant Beck, in September, 1886, was engaged in the boot and shoe business at the city of Auburn. On the thirteenth of November of that year Lewis P. Ross, a jobber in boots and shoes at Rochester, sold and delivered to Beck a bill of goods in his line. On the 11th day of March, 1887, Ross recovered a judgment for those goods in the Supreme Court for $931.64, damages and costs. Execution was issued and returned unsatisfied, and such proceedings

were had, that on the 13th day of May, 1887, the plaintiff was appointed receiver. On the 24th day of January, 1887, said Beck executed to the National Bank of Auburn a chattel mortgage to secure $1,150, and on the eighth day of February of the same year he executed another chattel mortgage to the defendant, Edward H. Avery, to secure $290, with interest. The mortgages covered the stock in trade of the defendant Beck, and in March, 1887, the Bank of Auburn assigned its mortgage to the defendant Avery. These two mortgages were given to secure honest debts, and the validity of the last one is not assailed for any reason. On the 16th day of March, 1887, both mortgages were foreclosed and the property sold for $1,350.50. The proceeds were at once applied to the payment of the debts of $1,440 secured by the two mortgages.

On the 16th day of February, 1887, Ross caused the goods covered by the mortgages to be attached. Avery replevied the property which was sold under the mortgages as above stated. The replevin action resulted in favor of Avery. The present action was commenced about the 1st of June, 1887. Issue was joined and it came on for trial at an equity term held in Rochester, and the trial court decided that the action was one of law and sent it to the circuit for trial. Two specific questions were submitted to the jury on that trial, each of which was answered in the affirmative. Those questions were : (1.) " Was the mortgage to the National Bank of Auburn, dated January 24, 1884, executed upon an agreement or understanding with the bank that the mortgagor might remain in possession of the property covered by the mortgage and sell the same in substantially the same manner as before the execution of the mortgage and use the avails?" (2.) "Did the plaintiff, with full knowledge that such an arrangement had been entered into, assent to the same?"

The mortgage of $290 was, in all respects, held to be valid. After the answering of those questions, motion was made for judgment on the verdict, which was granted. A motion was made by the plaintiff for a new trial, which was denied, and, from the judgment entered the plaintiff appealed to this court, where the judgment was reversed and a new trial ordered (20 N. Y. St. Rep., 801) on the ground that the action was an equitable one and should have been tried at Special Term. A trial was afterwards had on the equity side at the Special Term, where the two findings above stated were

adopted and the complaint was dismissed. Judgment was entered and the plaintiff appealed to this court.

The complaint in this action alleges, in substance, the recovery of the judgment, the appointment of the plaintiff as receiver, the execution of the chattel mortgages, the sale of the property under them, and then alleges that Avery was president of the said bank, and that "the said mortgages were made by the said Beck and the said Avery with intent to hinder, delay and defraud the creditors of said Beck, and particularly the said Ross. That they were executed for more than the amount due from the said Beck; that they were not accompanied by an immediate delivery or followed by an actual or continued change of possession of the chattels mentioned; that when the same were made it was understood and agreed between the parties thereto that the mortgagor should continue to deal with the mortgaged property and sell the same in the ordinary course of business as his own property, and the said Beck did, in fact, after the execution of said mortgages and for some period thereafter, with the consent of the mortgagees, dispose of the said property, or a part thereof, and appropriate the proceeds of the sale thereof to his own use by selling as a retail merchant to his customers."

The complaint further alleges that Avery never accounted to Beck or the plaintiff, as receiver; the insolvency of Beck, and that the judgment remains unpaid. The prayer is to the effect that the mortgages be adjudged fraudulent and void and that Avery be required to account for the property or its proceeds.

On the trial it appeared that when Ross heard of the mortgages he sent his agent, Gordon, to Auburn to get an explanation from Avery; that a conversation occurred between them, which was to the effect that Gordon asked Avery why he took the mortgage after he was given to understand that the liens for which the mortgage was taken should be without security; that Avery replied that Beck was pressed by other creditors and offered to secure the debt by mortgage, which he did; that the bank would let him go on, the same as if no mortgage had been made; that Gordon replied to the effect that if Beck would continue in business, and pay Ross a little now and then, he would be satisfied, and that Beck had some goods left which were out of season, and that if he would return them he would get credit. Avery replied he had no objections. None of

the goods were returned, nor did Beck afterwards make any payments. The trial justice held, in substance, that the debts secured by the mortgage were honest, and that after hearing Avery's statement, Ross concluded to acquiesce in the mortgages, and that he assented to them with full knowledge of all the facts.

It will be noticed that the goods were taken by virtue of the two mortgages. It is agreed that the second mortgage of $290 was valid. It was adjudged in the replevin suit that, as against the attachment, Avery was in the lawful possession of the property under his mortgages. There is no question as to the validity of the mortgages between Ross and the bank or him and Avery. They were given to secure honest debts, and as against the mortgagor valid and enforceable. In the case at bar the property was sold and the debts paid before any lien was acquired by the receiver. No lien was obtained by virtue of the attachment, because Avery succeeded as against the sheriff in establishing his superior right to the property. Judgment had been recovered, execution issued and returned *nulla bona*, so there was no lien by virtue of any levy at the time the receiver was appointed, which was not until long after the sale under the chattel mortgages and the application of the proceeds in the payment of the debts they were given to secure. This action was not commenced until more than two months after the debts secured by the chattel mortgages had been paid by the sale of the property, and nothing appears to show that the sale was not in all respects regular, or that the debts they were given to secure were not extinguished to the extent of the payment.

The learned and diligent counsel for the appellant has not called attention to any authority going to the length of holding that when an honest debt has once been paid out of the debtor's property, another creditor can compel him to refund, because as against creditors the mortgage given to secure a paid debt would have been adjudged void. In a controversy between different creditors the one who is most vigilant and prior in point of time usually has the advantage. Where a creditor is so diligent as to acquire a lien on property applicable to his debt, before payment of another secured by a mortgage void as against creditors, he is in a position to show that his lien is superior, and remove the fraudulent obstruc-

tion. But no such question is involved in the case at bar; all these debts were honest; the judgment was valid against everybody; the mortgages between the parties were valid; the debts they were given to secure *bona fide*; and although one of the mortgages could be adjudged void against creditors, it being valid between the parties, and the debt it was given to secure paid before proceedings commenced or lien acquired, the law will leave the parties where it finds them, and such seems to be the reasoning of the authorities. (*Hone* v. *Henriquez*, 13 Wend., 240; *Brown* v. *Platt*, 8 Bosw., 324; *Haggerty* v. *Palmer*, 6 Johns. Ch., 437; *Grover* v. *Wakeman*, 11 Wend., 187; *Averill* v. *Loucks*, 6 Barb., 470.)

The judgment must be affirmed.

MACOMBER, J., concurred; DWIGHT, P. J., not sitting.

Judgment appealed from affirmed, with costs.