CAMERON, HULL & CO. v. T. A. MARVIN.

1. CHATTEL MORTGAGES, *Becoming Valid; Attachment.* In an action of replevin where the plaintiff claims the property by virtue of four chattel mortgages, and the defendant claims the property by virtue of an attachment issued against the plaintiff's mortgagor, and levied upon the property in controversy, and where the chattel mortgages were never recorded, and the mortgagee did not immediately take possession of the property, but did a long time after the execution of the mortgages and nine days prior to the levy of the attachment upon the property, take the possession of the same under the mortgages, by and with the consent of the mortgagor, *held,* that the mortgages, from the time the mortgagee took possession of the mortgaged property, must be considered valid.

2. CHATTEL MORTGAGE, *How far Valid.* And where one of said chattel mortgages contained a stipulation that a portion of the mortgaged property might be sold by the mortgagor, *held,* as against the attaching creditor, that such mortgage must be considered valid as to all the mortgaged property delivered by the mortgagor to the mortgagee.

3. MORTGAGE, *Valid as to Property Delivered.* And where the mortgagee, knowingly and by acquiescence, permitted the mortgagor to dispose of some of the mortgaged property and to deal with all of it as though it were his own, the mortgagor depositing the proceeds of the sales of the mortgaged property in the mortgagee's bank, and the mortgagee permitting the mortgagor to draw the same out at different times, and as he might want them, by drawing checks thereon, *held,* that after the mortgagor delivered the possession of the mortgaged property to the mortgagee, the mortgages must be held valid as to all the mortgaged property so delivered.

4. TITLE to *Property Mixed with Mortgaged Property.* And at the time when the mortgaged property was delivered by the mortgagor to the mortgagee, there was other property of like character and description as that of the mortgaged property mixed with the mortgaged property, and the mortgagor delivered this other property along with the mortgaged property to the mortgagee, both parties intending that this other property should be held by the mortgagee, under the mortgages and as

security for the mortgage debt, *held*, that the mortgagee may retain this other property as a security for his debt as against any subsequent attaching creditor.

5. ———— *Attaching Creditors.* And further *held*, that the foregoing propositions apply to attaching creditors, (attaching after the property has been delivered,) whose debts may have been created after the execution of the mortgages and before the mortgaged property was delivered to the mortgagee, as well as to other attaching creditors.

6. ATTACHING CREDITOR, *Representations to; Good Faith.* And further, *held*, that the foregoing propositions will apply, although the mortgagee, after his mortgages were executed, and before the attaching creditor's debt was created, told the attaching creditor that the mortgagor was good, and although the attaching creditor may, in part, have permitted his debt to be created upon the credit of the property which the mortgagor then had in his possession, including the mortgaged property—all that was done and said, however, having been done and said in good faith.

## *Error from Phillips District Court.*

ACTION brought by *H. J. Cameron, Charles W. Hull* and *M. H. Johnson,* partners under the name of Cameron, Hull & Co., against *T. A.. Marvin,* for the recovery of certain grain, flour, and other property.

It is admitted that all the property in controversy once belonged to H. J. Patterson, and all the parties claim under him. The plaintiffs claim under and by virtue of four chattel mortgages, and the defendant claims under and by virtue of an attachment issued in an action in which F. Goodnow & Co. were plaintiffs and said H. J. Patterson was the defendant, and levied on the property by the defendant as sheriff of Phillips county. Said chattel mortgages read as follows:

"In consideration of two thousand dollars, the receipt of which is hereby acknowledged, I hereby sell, assign and set over to Cameron, Hull & Co., of Kirwin, Kansas, the following-described property, viz.: One frame corn crib, eighty feet long by twelve feet wide, located on leased land of R. R. Kelly, south of the C. B. R. R. depot, and four thousand three hundred bushels of ear corn contained therein; one frame grain house, located on leased land of R. R. Kelly, north of the Michigan Lumber Co.'s yard, and twelve hundred bushels of shelled corn contained therein; one frame grain house, located on leased land of one Van Allen, between the stores of

B. Flesher & Co. and Horace Moulton, and three thousand bushels of ear corn and one hundred and sixty-five bushels of shelled corn contained therein; and one set of Fairbanks scales now in use and located in connection with my grain store facing public square west, and my stock of flour, corn, ground feed and other grain, all contained in said store.

"Now the conditions of this sale are, that if one certain promissory note of even date herewith, for two thousand dollars, and due May 1st, 1880, be paid at maturity, this sale to be void, otherwise in full force. The above property to remain in possession of myself, but not to be sold or disposed of in any way without the consent of the grantees, except, in case the grantees at any time preceding the maturity of said note shall deem the security inadequate or decreasing in value, they may declare the amount of said note due, and shall take the above-described property into their own possession, except shall have the right to buy and sell flour, grain and feed from the above-described store on public square without interruption; also my frame grain house, located directly west of the general store of W. E. Rowe, and all my wheat contained therein exceeding fourteen hundred bushels.

"Witness my hand, this second day of March, 1880.
"Witness, M. H. JOHNSON.        H. J. PATTERSON."

"In consideration of two thousand dollars, the receipt of which is hereby acknowledged, I hereby sell, assign and set over unto Cameron, Hull & Co., of Kirwin, Kansas, the following-described property, viz.:

"One frame grain house, located east of the Kirwin bank, and known as the Hunt & Belford grain house, and three thousand bushels of wheat contained therein; also, fourteen hundred bushels of wheat contained in my frame grain house, located directly west of the general store of W. E. Rowe, and known as the Johnson grain house. All of the above described property is in the city of Kirwin, Phillips county, Kansas.

"Now the conditions of this sale are, that if one certain promissory note for one thousand dollars, dated March 22d, 1880, and due May 22d, 1880, given by me to the said Cameron, Hull & Co., also one certain promissory note dated May 17th, 1880, and due June 16th, 1880, for one thousand dollars, given by me to said Cameron, Hull & Co., be paid at maturity, then this obligation to be void, otherwise in full force.

"Witness my hand, this 17th day of May, 1880.
"Witness: M. H. JOHNSON.        H. J. PATTERSON."

"In consideration of one thousand dollars, the receipt of which is hereby acknowledged, I hereby sell, assign unto T. J. Templar & Co., of Atchison, Kansas, fourteen hundred bushels of wheat contained in my grain house, located east of the Kirwin bank, and west of Bryson's lumber yard, in the city of Kirwin, Kansas, said wheat to remain in my possession, but shall not be sold or removed without the consent of T. J. Templar & Co.

"The conditions of this sale are such that if I pay or cause to be paid to T. J. Templar & Co., one thousand dollars, on or before April 6th, 1880, this sale to be void, otherwise in full force.

"KIRWIN, KANSAS, February 6th, 1880.

H. J. PATTERSON."

(On the back of the foregoing the following assignments are written, in words and figures following, to wit:

"We hereby sell the within-described property to the German Savings Bank of Atchison, Kansas, and authorize them to take and collect the same at any time, hereby conveying all our rights herein to secure the notes hereto attached.

T. J. TEMPLAR & CO.

"We hereby sell, assign and transfer and deliver the within warehouse receipt to Cameron, Hull & Co., of Kirwin, Kansas. Value received.

THE GERMAN SAVINGS BANK OF ATCHISON, KAS.")

"In consideration of two thousand dollars, the receipt of which is hereby acknowledged, I hereby sell and assign unto Messrs. T. J. Templar & Co., of Atchison, Kansas, fourteen hundred bushels of wheat contained in my grain house, located near the Kirwin bank, and known as the Hunt & Belford granary, and fourteen hundred bushels of wheat contained in my grain house, located in the rear of the general store of W. E. Rowe.

"Now the terms of this sale are, that if I shall pay or cause to be paid, two thousand dollars to said T. J. Templar & Co., on or before April 20th, 1880, this sale to be void, otherwise in full force.                          H. J. PATTERSON."

(The foregoing instrument is indorsed in writing the following words: "T. J. Templar & Co., per Draper.")

A trial was had in the case, before the court without a jury, and the court made special findings of fact and conclusions of law as follows:

"FINDINGS OF FACT.—1. On March 2d, 1880, and from that time until the commencement of this suit, the plaintiffs were engaged in the banking business in the town of Kirwin, Phillips county, Kansas, and at the same place one H. J. Patterson was engaged in the grain business, and had been so engaged from December, 1879, until June 3d, 1880, buying and selling wheat and corn, and in addition thereto was conducting a flour and feed store.

"2. On March 2d, 1880, the plaintiffs loaned to said Patterson $2,000, due May 1st, 1880, and took from him a conveyance in the nature of a chattel mortgage of certain personal property, consisting of certain grain houses and a lot of wheat and corn therein, also a set of Fairbanks scales and the stock of flour, corn, ground feed, etc., in said Patterson's flour and feed store, said property being in Kirwin, Phillips county. On March 22d, 1880, plaintiffs loaned to said H. J. Patterson $1,000, due in thirty days after that date, and on May 17th, 1880, made a further loan of $1,000 to said Patterson, due in thirty days, and on said May 17th took from said Patterson another conveyance in the nature of a chattel mortgage of certain personal property, consisting of a frame grain house and 3,000 bushels of wheat therein, and 1,400 bushels of wheat in another grain house—all being in Kirwin, Phillips county, Kansas.

"3. The chattel mortgages mentioned in the second finding were placed by plaintiffs in their safe in the bank at Kirwin, without depositing the originals or copies in the office of the register of deeds of Phillips county, as required by law.

"4. After the above-mentioned mortgages were given, said Patterson, with the knowledge and consent of the plaintiffs, continued in possession of all the property mentioned in said mortgages, and carried on his business of buying and selling wheat and corn, flour, feed, etc., in the same manner as he had done before such mortgages were given. In the conduct of said business from March 2d, 1880, to June 3d, 1880, said Patterson sold corn, wheat, flour, etc., from the lots of such property included in said mortgages, deposited the proceeds of such sales to his own credit in plaintiffs' bank, and checked the same out again for the purchase of other grain, which was put into the same grain houses and cribs in which was the grain mentioned in said mortgages, there being no separation thereof, but all mingled together; the above all being with the knowledge and assent of plaintiffs. No part of the pro-

ceeds of sales of grain, etc., was applied to the payment of what said Patterson owed plaintiffs.

"5. The testimony does not show how much, if any, of the grain, corn and wheat involved in this action was the identical corn and wheat on hand and in the cribs and houses at the time said mortgages were given. But the testimony does show that a considerable part at least of the corn and wheat involved herein was acquired by said Patterson subsequently to the execution of said mortgages: flour of the value of $113, oats of the value of $120, wheat of the value of $300, and corn of the value of $425 — all shown to have been acquired after said mortgages were executed, and are included in the property replevied in this action.

"6. On June 3d, 1880, the plaintiffs took possession of said Patterson's flour and feed store, and told him they would take possession of his grain and grain houses, by virtue of the two above-mentioned mortgages, and said Patterson thereafter exercised no control over it.

"7. About the 13th day of April, 1880, F. Goodnow & Co., who were engaged in the milling business at Salina, Kansas, sold to said H. J. Patterson, a car-load of flour for $516, on 30 days' time, making such sale upon the credit of the property, grain, etc., which Patterson had and claimed to own in Kirwin. Just before the time of sale, C. W. Hull told the agent of F. Goodnow & Co., upon inquiry, that said Patterson was good. Said agent also, about the same time, but before consulting said Hull, had been told that Patterson was doing a good business. Said Goodnow & Co. having no knowledge or notice of any liens or mortgages being upon any of said Patterson's property, and had no notice thereof until about June 11th, 1880.

"8. On June 11th, 1880, said F. Goodnow & Co. commenced an action in the district court of Phillips county, Kansas, against said Patterson for the recovery of the aforesaid sum of $516. An order of attachment was duly issued in said action to the defendant, T. A. Marvin, then sheriff of said county, and by him levied upon the property mentioned in plaintiff's petition herein, on June 12th, 1880. And defendant in this action claims the possession of said property by virtue of the said order of attachment.

"9. Whatever claim plaintiffs have to the property in question is by virtue of the two chattel mortgages referred to.

"10. On February 6th and 20th, respectively, said Patterson executed two conveyances of the nature of chattel

mortgages to T. J. Templar & Co., of Atchison, Kansas, on certain wheat in Kirwin, but neither said mortgages nor copies thereof were ever deposited in the office of the register of deeds, as required by law. Such mortgages afterward, about June 12th, 1880, came into the hands of the plaintiffs.

"11. The value of the property replevied is as stated in the petition, and said property has been in the possession of plaintiffs since the commencement of this action.

"12. The amount due the said F. Goodnow & Co. from said H. J. Patterson is at this time about $533.75, and the probable costs of the action wherein said property was attached, are $37.67."

The questions submitted by the plaintiffs, and the findings thereon, are:

"1. Did the plaintiffs take possession of the property by virtue of the chattel mortgages on the 3d day of June, 1880? Ans. Yes.

"2. Did the plaintiffs take possession of the property by virtue of delivery of the property to secure the indebtedness? A. No.

"3. Was any fraud proven against the plaintiffs to defraud, hinder or delay the collection of the debt of F. Goodnow & Co.? A. No.

"4. Did the plaintiffs acquire the legal and peaceable possession of said property between the 3d day of June, 1880, and the 12th day of June, 1880, by virtue of delivery of said property by said H. J. Patterson to plaintiffs to secure the plaintiffs' claims? A. Plaintiffs acquired possession by virtue of the chattel morgages.

"5. Did H. J. Patterson recognize the taking of the property by the plaintiffs between the 3d day of June, 1880, and the 12th day of June, 1880, as a delivery for the purpose of securing the plaintiffs' claim? A. He recognized the taking under the bills of sale.

"6. Did H. J. Patterson consent to the taking of the property by the plaintiffs between the 3d day of June, 1880, and the 12th day of June, 1880, as security for the plaintiffs' claims by virtue of delivery? A. He consented to the taking under and by virtue of the bills of sale."

And as a conclusion of law the court found as follows, to wit:

"The defendant is entitled to a return of said goods and property to him or the payment to him of the amount of the

claim of said F. Goodnow & Co., and the probable costs in their action against said H. J. Patterson, being the total sum of $571.42."

The court, at the October Term, 1880, rendered judgment accordingly for the defendant and against the plaintiffs, who bring the case here.

*C. Angevine*, for plaintiffs in error:

As there was no actual fraud in the transactions between plaintiffs and Patterson, and as there was an actual and continued change of possession of the mortgaged property for nine days before the property was levied on by the defendant, the mortgage is valid. (23 Kas. 421; 22 id. 127; 20 id. 576; 20 Ohio, 161, 389; 4 Ohio St. 481; Thompson on Mortgages, 483; 8 Bosw. 324; 22 Ill. 377; 42 Miss. 749; 12 Blatchf. 438; 24 Iowa, 320; 20 id. 399; 2 Story, 630; 27 Mich. 529; 34 id. 418; 35 id. 28, 229; 14 Bank. Reg. 371; 11 Metc. [Mass.] 333; 2 id. 258; 3 id. 515; 12 Pick. 451°; 1 id. 288; 10 H. L. Cas. 191; 7 Shepl. 407, 411. See also 6 Duer, 504; 11 R. I. 482.)

*Garver & Bond*, for defendant in error:

With reference to this claim of plaintiffs, that they took possession of all Patterson's property for security, the language of the opinion in *Blakeslee v. Rossman*, 43 Wis. 124, 125, where a somewhat similar claim was made, is appropriate.

Whatever rights the plaintiffs have must arise from the two chattel mortgages of March 2 and May 17, 1880. The language of § 9 of the mortgage act is so clear and emphatic, that no place is left for construction. It means just what it says, and the reason of the law is apparent upon the face of the statute. Tested by this requirement, the mortgages under which plaintiffs claim are absolutely void as against F. Goodnow & Co., the attachment creditors, for they were not filed, neither was immediate possession taken.

"Inasmuch as the possession was not altered, if it [the mortgage] was not put on file prior to plaintiffs' becoming creditors, it was invalid as against them; the law being that

those who become creditors whilst the mortgage is not filed, are protected, and not merely those who obtain judgment or levy attachments before the filing." (*Fearey v. Cummins,* 41 Mich. 376, 383; *Bank of Leavenworth v. Hunt,* 11 Wall. 391.)

The mortgages are void because the mortgagor was allowed to retain exclusive possession and control of the property mortgaged, and make sale of it in the ordinary course of trade, and in the same way as before the mortgages were made. (17 Wend. 492; 9 N. Y. 213; 19 id. 123; 3 Keyes, 407; 5 Abb. N. C. 184; 18 Ill. 396; 51 id. 352; 76 id. 479; 16 Ohio, 547; 5 Ohio St. 1; 7 id. 218; 24 Mo. 63; 31 id. 445; 50 id. 204; 3 Col. 139; 80 N. C. 161; 7 Oreg. 478; 46 Ga. 253; 21 Minn. 187; 21 Ind. 355; 61 id. 11; 8 Yerg. 417; 1 Coldw. 15; 1 Pa. 57; 5 Serg. & R. 275; 17 id. 251; 15 Conn. 26; 19 id. 460; 17 N. H. 298; 52 id. 148; 12 Gratt. 436; 8 Neb. 373; 13 Wis. 629; 43 id. 116; 50 Tex. 638; 22 Wall. 513.)

The decision in *Frankhouser v. Ellett,* 22 Kas. 127, does not conflict with the above authorities. In that case the mortgagor retained possession and disposed of the goods for the benefit of the mortgagee, and was regarded as a *quasi* agent of the mortgagee for that purpose. Had the facts been that he was continuing his business, buying and selling the goods for the purpose of benefiting himself mainly, we apprehend the mortgage would not have been upheld. Similar decisions have been made by the courts of other states, in which the rule above contended for by us is most strictly enforced — the distinction being clearly made between the two classes of cases. (57 Mo. 404; 28 N. Y. 360; 20 Ohio St. 110; Sup. Ct. N. H., 9 Rep. 614.)

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought in the district court of Phillips county, for the recovery of certain grain, flour, and other property. The action was commenced and prosecuted by H. J. Cameron, Charles W. Hull, and M. H. Johnson, partners doing a banking business at

Kirwin, Kansas, in said county, under the firm-name of Cameron, Hull & Co., against T. A. Marvin, who was sheriff of said county.

It is admitted by the parties that all the property in controversy once belonged to A. J. Patterson, who was a dealer in grain, and kept a flour and feed store at Kirwin, Kansas; and all the parties claim under him. The plaintiffs claim under and by virtue of four chattel mortgages; and the defendants claim under and by virtue of an attachment issued in an action in which F. Goodnow & Co. were plaintiffs, and said H. J. Patterson was the defendant, and levied on the property by the defendant, as sheriff of said county.

The facts in the case are substantially as follows: On February 6, 1880, said Patterson executed an instrument which was in substance a chattel mortgage, to T. J. Templar Statement of & Co., of Atchison, Kansas, on 1,400 bushels of facts. wheat in one of Patterson's grain houses, in Kirwin, Kansas, to secure a debt of $1,000. On February 20, 1880, Patterson executed another such instrument to T. J. Templar & Co., on 1,400 bushels of wheat contained in another grain house of Patterson's in the same town, to secure a debt of $2,000. On March 2, 1880, Patterson executed a chattel mortgage to the plaintiffs, Cameron, Hull & Co., on three grain houses and about 8,600 bushels of corn therein, one Fairbanks scale, and flour, feed, etc., contained in a flour and feed store—all in Kirwin, Kansas, to secure a debt of $2,000. On March 22, 1880, the plaintiffs loaned Patterson $1,000, taking no security therefor; and on May 17, 1880, loaned $1,000 more, and at that time took another chattel mortgage from Patterson to themselves on another grain house and 4,400 bushels of wheat, contained in this and in still another grain house—all situated in Kirwin, Kansas, to secure the last two loans. On April 13, 1880, F. Goodnow & Co., who were then engaged in the milling business at Salina, Kansas, sold to said Patterson a car-load of flour for $516, making such sale, as they claim, upon the credit of the property, grain, etc., which Patterson had and claimed at Kirwin,

Kansas; but which were mortgaged to said T. J. Templar & Co. and to the plaintiffs. Goodnow & Co., however, had no knowledge of such mortgages. On June 3, 1880, the plaintiffs took possession of all of said mortgaged property, under their chattel mortgages. They also at the same time took possession of some other property belonging to Patterson, consisting of grain, flour, etc., which was mixed with the mortgaged property, but which Patterson did not have or own at the time he executed the mortgages. The plaintiffs claim, and testified on the trial, that they took possession of all of this property not only under their chattel mortgages, but that they took such possession of the additional property as additional security for their debt. The court below, however, found that they took it all under their chattel mortgages. Patterson owed the plaintiffs at that time $4,000, all of which was then due except $1,000. The property was then worth $5,480.42. On June 11th or 12th, 1880, the plaintiffs purchased both of said mortgages executed by Patterson to T. J. Templar & Co. The evidence seems to show that the purchase was made on June 11th, and on the day before any attachment was served on the property; while the court below finds that the purchase was made on June 12th; but whether it was made before or after the service of the attachment, the court does not find. And perhaps it is not material, for all the property covered by these two mortgages is also covered by the subsequent mortgages, executed March 2d and 22d, 1880, to the plaintiffs. At the time of the purchase of these mortgages executed to T. J. Templar & Co., there was then due on the same the sum of either $2,000 or $3,000. On June 11, 1880, F. Goodnow & Co. commenced their action against Patterson to recover their said claim of $516, and procured an attachment to issue in the case. On June 12, 1880, said attachment was levied on all of said property by the defendant Marvin, as sheriff of said Phillips county, and the property was taken into his possession. On June 14, 1880, the present action of replevin was commenced by the plaintiffs, Cameron, Hull & Co., against the defendant, T. A. Marvin, for the re-

covery of all said property. None of the aforementioned,
mortgages were ever filed for record, and it is claimed by
F. Goodnow & Co. that they had no knowledge of any such
mortgages when they sold said flour to Patterson; though it.
is not claimed that they did not have knowledge of said mort-
gages at the time their attachment was levied on the property.
It is also claimed by F. Goodnow & Co. that just before the
time of said sale, C. W. Hull told the agent of F. Goodnow
& Co., upon inquiry, that said Patterson was good. And it.
is also claimed that said agent about the same time, but be-
fore consulting said Hull, had been told that Patterson was.
doing a good business; and as before stated, F. Goodnow &.
Co. claim that they sold said flour upon the credit of the
property which Patterson had in his possession. It also·
seems that Patterson retained possession of all the property
up to June 3, 1880, and continued to do business, buying and
selling grain, flour, feed, etc., in the same manner that he had
previously done. Some of the grain, · flour, feed, etc., that
had been mortgaged, was sold by Patterson before the plain-
tiffs took possession of the property; while other property of
like kind had been purchased by Patterson after the mort-
gages were executed and before the plaintiffs took possession
of the property, and had been mixed with the mortgaged
property. Whenever Patterson sold any grain, flour or other·
property, he deposited the money received therefor in the·
plaintiffs' bank, situated in Kirwin, Kansas; and when he
wished to use any of said money for the purpose of purchas-
ing other grain, flour, etc., he drew checks on the bank for·
the amount which he wished to use. All of said mortgages
were executed for money loaned; and all the transactions be--
tween Patterson and the various other parties — T. J. Templar
& Co., Cameron, Hull & Co., and F. Goodnow & Co. — were·
in good faith, and not for the purpose of defrauding or injur-
ing any person; also, the purchase by the plaintiffs of the·
mortgages executed to Templar & Co. was in good faith.

The defendant claims that all these chattel mortgages were--
and are void — first, because they were never recorded; second,.

because one of them provided that the mortgagor should "have the right to buy and sell flour, grain and feed from" his flour, grain and feed store; third, because the mortgagees not only permitted the mortgagor to buy and sell flour, grain and feed, in connection with his grain, flour and feed store, which was provided for in one of the mortgages, but also in fact permitted the mortgagor to buy and sell such articles in connection with his several grain houses, which was not provided for in any of the mortgages. And he claims that none of the subsequent acts of the parties made any of these mortgages valid.

We shall assume, for the purposes of this case, that all the mortgages were void as against F. Goodnow & Co., and as against all other creditors of Patterson, and subsequent purchasers, up to the time when the plaintiffs took possession of the property, and shall simply discuss the question whether they continued to be void after that time. Indeed, such mortgages, not being recorded and being of property not delivered, are made void by § 9 of the mortgage act, which reads as follows:

"SEC. 9. Every mortgage, or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited in the office of the register of deeds, in the county where the property shall then be situated, or if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident." (Comp. Laws 1879, p. 557.)

While these mortgages would all be void because not recorded and the property not delivered, they could not all be void, nor could any one of them be wholly void, by reason of said stipulation authorizing the mortgagor to sell the mortgaged property; for none of the mortgages, except the one dated March 2, 1880, authorized the sale of any of the mortgaged property by the mortgagor, and that one author-

ized such sales from only the flour and feed store. It is perhaps true that that mortgage also contained a stipulation in reference to the sale of wheat, etc., in a grain house; but neither this grain house nor any of its contents were covered by that mortgage; hence this stipulation could not have any force or effect. And the mortgage also authorized the mortgagees to take possession of the property whenever they should deem the security inadequate or decreasing in value. And it is at least doubtful whether said mortgages were void merely because the plaintiffs permitted the mortgagor to sell some of the mortgaged property. (*Frankhouser v. Ellett*, 22 Kas. 127.) All the parties resided and did business in the same town — the mortgagor doing his business through the plaintiffs' bank, depositing all his money therein, and the plaintiffs having the power to keep a continuous watch over the mortgaged property, the amount sold, etc., and to take possession of the same whenever they deemed the security inadequate or decreasing in value. We shall assume, however, that the mortgages were void for this reason also.

We now come to the question: Did the mortgages become valid when the plaintiffs took possession of the property under them? We think we must answer this question in the affirmative. (*Dayton v. Savings Bank*, 23 Kas. 421; *Savings Bank v. Sargent*, 20 Kas. 576; *Nash v. Norment*, 5 Mo. App. 545; *Eastman v. Water Power Co.*, 24 Minn. 437; *Read v. Wilson*, 22 Ill. 377; *Frank v. Miner*, 50 Ill. 444; *Chipron v. Feikert*, 68 Ill. 284; *McTaggart v. Rose*, 14 Ind. 230; *Brown v. Platt*, 8 Bosw. 324; *Brown v. Webb*, 20 Ohio, 389; *Chapman v. Weimer*, 4 Ohio St. 481; *Field v. Baker*, 12 Blatchf. 438.)

Mr. Jones, in his work on Chattel Mortgages, says that "if a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, although it be not acknowledged and recorded, or the record be ineffectual by reason of any irregularity. The subsequent delivery cures all such defects, and it cures any defects there may be through an insufficient description of the property. . . . Delivery of possession

40—26 KAS.

under a mortgage before rights have been acquired by others, will cure any invalidity there may be in the instrument, whether arising from an insufficient execution of it, omission to record it, or from its containing a provision which makes it void except as between the parties." (Jones on Chattel Mortgages, § 178.)

This statement of the law is undoubtedly in accordance with the great weight of authority. It may be true that in some cases, where the mortgagee takes possession of the mortgaged property under a void mortgage without the consent of the mortgagor, that such possession will not make the mortgage valid. This, we think, was the case in the case of *Blakeslee v. Rossman,* 43 Wis. 116, the leading case referred to by counsel for defendant in this case. But in all cases where there is a voluntary delivery of the possession of the property by the mortgagor to the mortgagee, under the mortgage, such delivery will render the mortgage valid as to all persons not then having any specific right to or lien upon the property, provided the mortgage was previously valid as between the parties thereto; and it must be remembered that in the present case the mortgagor voluntarily delivered the property to the mortgagees, and assisted them in making an inventory thereof.

Counsel for defendant in error seem to contend that where a chattel mortgage is not recorded immediately after it is executed, and the property is not immediately delivered to the mortgagees, it is absolutely void as to all creditors whose debts have been created subsequent to the execution of the mortgage and prior to its being recorded, and prior to the delivery of the property, without reference to any lien procured upon the property by virtue of an attachment, or an execution, or otherwise. That is, they claim that such a mortgage is so absolutely void as to general creditors, whose debts have been created after the execution of the mortgage and before the recording of the same, or before the delivery of the property, that they may obtain a lien upon the property after the mortgage is recorded and after the property is delivered, by

virtue of an attachment or other legal process.  Counsel cite two authorities which they claim sustain this doctrine: *Fearey v. Cummins*, 41 Mich. 376, and *Bank of Leavenworth v. Hunt*, 78 U. S. (11 Wall.) 391.  The last case cited does not sustain the doctrine claimed by the defendant, and whether the first does or not, we can hardly tell.  It says, however, that "a chattel mortgage cannot be questioned by a creditor at large, except by some proceeding against the property, as by garnishee process."  The decision is founded upon a decision made in the case of *Thompson v. Van Vechten*, 27 N. Y. 568; and whether that case sustains the doctrine of counsel or not, we can hardly tell.  Probably it does not, for in the case of *Jones v. Graham*, 77 N. Y. 628, it is held that one not having a judgment and execution is not a creditor within the statute declaring that the omission to file a chattel mortgage renders it void as against creditors, etc.  (See also *Hayman v. Jones*, 7 Hun, 238.)  But whether the doctrine claimed by counsel is sustained by any authority or not, we do not think it is sound.  Of course, a chattel mortgage not recorded of property not delivered is void as against all creditors who have no notice of the mortgage; but they have no right to or interest in any specific property until they have obtained this right or interest by some legal process.  They have no more right to the property than the mortgagee has whose mortgage is void.  They all have an equal right to the property — that is, they all have a right to procure a lien upon it or an interest in it by virtue of legal process, or chattel mortgage, or purchase; and the one who first acts will obtain the prior right in and to the property.  If one of the creditors already has a chattel mortgage upon the property, he may file his mortgage or procure possession of the property; and if he has done this with the consent of the mortgagor, he has certainly obtained the prior right to the property.  The mortgagor has a continuing right to mortgage his property to secure his debts so long as he acts in good faith and does not mortgage property already mortgaged to others.  He has a right to prefer one creditor over another; and he may prefer any one of his creditors over

any of the others. And if the mortgagee, whose mortgage is not recorded, and who does not have possession of the property, records his mortgage with the consent of the mortgagor, or takes possession of the property with the consent of the mortgagor, his mortgage then has the force and effect of a mortgage executed on the day on which it is filed for record, or on which the property is delivered. It is the same then as though a new mortgage had been executed by the parties and recorded. The old mortgage is then given life and force and effect by the joint action of both the parties, and hence must be held to be valid from that time on, as against all persons.

As to what would be the rights of the parties in a case like the present if the mortgagee should file his mortgage for record without the consent of the mortgagor, or should take possession of the property without the consent of the mortgagor, we do not now wish to decide. That question is not in the present case. That is possibly the question which was decided in the case of *Fearey v. Cummins,* 41 Mich. 376.

The next question is, with reference to the rights of the parties to the property acquired by Patterson after the execution of all the mortgages. Of course this property was not included in the mortgages at the time of their execution. In fact, it could not have been included in the mortgages at that time, for it is not within the power of any person to mortgage property which does not exist or which does not belong to him. He cannot mortgage property which is afterward to be created, or purchased, or procured. He can only mortgage property which at the time is in existence, and to which he has a title. Parties may make contracts with reference to future acquired property, and contracts which will be legal and valid and will be upheld; but such contracts do not constitute chattel mortgages. They are simply executory contracts, to be performed in the future; and while they are binding upon the parties making them, they are void as to third persons who have no notice respecting them. They can never be treated as chattel mortgages affecting third persons. Such contracts, however, are always held valid as though they

were chattel mortgages, as against third persons who have not in the meantime obtained any specific interest in the property when the mortgagee has obtained the possession of the property under the contracts. (*Rowley v. Rice*, 52 Mass. [11 Metc.] 333; *Mitchell v. Black*, 72 Mass. 100; *Williams v. Briggs*, 11 R. I. 476; *Cook v. Corthell*, 11 R. I. 482; *Leland v. Collver*, 34 Mich. 418; *Chapman v. Weimer*, 4 Ohio St. 481; *Brown v. Platt*, 8 Bosw. 324; *McCafferty v. Woodin*, 65 N. Y. 459; *Gregg v. Sanford*, 24 Ill. 17; *Farmers' Loan & Trust Co. v. Commercial Bank*, 11 Wis. 207; *Moore v. Byrum*, 10 Rich. [S. C.] 452.

When a mortgagee takes possession of the future acquired property under such a stipulation in the mortgage, he then holds the property by way of pledge, but in the same manner as though the mortgage had been executed at the time he takes the possession of the property, and in the same manner as though he had taken the property under and by virtue of a chattel mortgage covering the property.

While these decisions are not entirely applicable to the present case, yet we think they must control the decision thereof. The only difference between the cases, is this: In the cases above referred to, the mortgagees took possession of the property under an executory written contract, made some time previously; while in the present case the mortgagees took possession of the property under a parol contract, made at the time they took the possession of the property, but in pursuance of an arrangement which evidently had been in contemplation of the parties for a considerable time before its consummation. The intention of the parties is in all cases precisely the same. They intend that the mortgagees shall take possession of the property as security for their debts, and in the same manner as though the property were covered by the mortgage. The mere fact that one is in writing and the other in parol, we do not think can make any difference; and neither do we think that the mere fact that one was made at the time the mortgage was made, and the other was not made until the time the property was

delivered, can make any difference. In both cases the mort-gagees took possession of the property and held it as against all persons who have no prior specific right or interest in or to it. Of course we are now speaking entirely of *bona fide* transactions. Any fraud might vitiate the whole thing; but no fraud is charged or imputed to the plaintiffs in this case. Indeed, when they took possession of the property their claims against Patterson amounted to $4,000. There were already prior mortgages on the property to T. J. Templar & Co., amounting to $2,000 or $3,000, of which prior mortgages the present plaintiffs at the time had notice, and could not con-sider as void; while all the property received by the plain-tiffs from Patterson amounted to only $5,480.42. This property, after paying the mortgages of T. J. Templar & Co., would not pay the plaintiffs' claim. The defendant would certainly not think that this amount of property was too great for the plaintiffs to take to secure their claim, for the defendant attached the whole of it to pay a claim of only $516.

The whole question, then, simply resolves itself into a ques-tion of vigilance between creditors, all acting in good faith; and from the time that F. Goodnow & Co.'s claim was created, on April 13, 1880, up to the time that the plaintiffs took possession of the property on June 3, 1880, the entire property was free from all of said mortgages, so far as F. Goodnow & Co. were concerned, and free from all other liens of every nature and description whatsoever, and F. Good-now & Co. had the power to obtain valid mortgages upon it, providing Patterson was willing, or to commence proceedings to obtain an attachment lien or some other judicial lien, upon it. But they neglected to do so, and on June 3, 1880, the plaintiffs took possession of the property, and with the con-sent of Patterson appropriated it for the payment of their claims. This gave the plaintiffs a valid lien upon the prop-erty in the nature of a pledge independent of the mortgages; and the mere fact that mortgages had previously been exe-cuted, we do not think can destroy or invalidate the lien.

Indeed, we think the mortgages determine the nature and character of the lien. If the mortgages had been executed at the time that the property was delivered, instead of prior to the acquisition of the property, the description of the property contained in the mortgages would have covered this very identical property, and the title to the property would have passed under and by virtue of the mortgages; and in one sense—and in a very material sense—the mortgages were executed and made effective at the time the property was delivered; and the property, as the court finds, was delivered under the mortgages. We suppose that if the mortgages had never been executed, the defendant would admit that the plaintiffs obtained a valid lien upon the property in the nature of a pledge which could not be defeated by any attachment or other legal process levied upon the same by the defendant, for such is the law; and the mere fact that the mortgages had previously been executed, we do not think could prevent the plaintiffs from obtaining such lien.

We do not think that the conversation between C. W. Hull and the agent of F. Goodnow & Co. affects the rights of the parties in this case in the least, as there is no pretense but that all the parties acted in good faith.

It also seems that the plaintiffs, when they replevied the property, retained the possession thereof.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiffs and against the defendant, for the possession of the property.

All the Justices concurring.