## M. L. CAMPBELL v. J. V. QUINTON.
### No. 142.

1. REPLEVIN —*Transfer of Claim.*   On the trial of an action in replevin, it is competent for the plaintiff to prove that, subsequently to the commencement of the action, the defendant had sold and assigned all of his right to or claim upon the property in dispute.

2. ——— *Nature of Judgment When Defendant Has Transferred His Claim.*   Where the defendant, at the commencement of an action in replevin, has some right or interest in a part of the property replevied, or right of possession thereto, but for some reason the right or interest has been assigned, transferred or lost before the trial, the court should not order a return of the property to the defendant, or render a judgment in his favor for its value, but should inquire into and determine whether the property should be ordered returned, or, if a return could not be had, render a judgment for the value thereof.   A return of the property should not be ordered nor judgment rendered for its value when it is shown that it would be inequitable to return it to the defendant or give him judgment for its value.   When the parties are all before the court, the court should as far as possible adjust all equities which arise between the parties respecting the disposition of the property, determine all matters between them in relation to or growing out of the property, and should hear all testimony respecting the ownership or right of possession thereto so as to render such judgment as shall do justice between the parties, not only as to the ownership or right of possession at the commencement of the action, but that the property may be disposed of by the judgment of the court so as to do no injustice to either party.

3. CHATTEL MORTGAGE— *After-Acquired Property.*   At common law, nothing can be mortgaged that is not in existence or when it does not belong to the mortgagor at the time the mortgage is made, but parties may make a contract with reference to after-acquired property, to be added to and made a part of the property mortgaged, and the contract will be valid and binding between the parties ; and if the future-acquired property is mingled with the property described in the chattel mortgage and added to and becomes a part of a stock of goods mortgaged, and the rights of third persons have not intervened, it becomes a lien on all of the property intermingled and added to the mortgaged property.

4. ——— *When Mortgage Attaches.*   A mortgage of a stock of goods, situated in a certain storeroom, and for future additions

thereto, is a valid mortgage of such future-acquired goods as soon as they are put in the storeroom and become a part of the general stock covered by the mortgage.

MEMORANDUM.— Error from Osage district court; WILLIAM THOMSON, judge. Action in replevin by M. L. Campbell against J. V. Quinton. Judgment for defendant. Plaintiff brings the case to this court. Reversed. The opinion herein, filed July 13, 1896, states the material facts.

*Robert C. Heizer*, for plaintiff in error.

*H. B. Hughbanks*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: This was an action in replevin to recover the possesion of a certain stock of drugs, drug sundries, prescription case, show-case, and all the fixtures and articles used in connection with carrying on a drug-store, in a certain building in Osage City, Kan. The possession of this property was claimed under a certain chattel mortgage executed by J. V. Quinton to M. L. Campbell, bearing date March 17, 1890. The property was described in the mortgage as follows :

"All the drug stock, drug sundries, prescription case, show case, and all fixtures and tools in said stock of drugs now in the building on the north end of lots 2, 4, and 6, block 17, Wetherall's addition, known as the drug stock heretofore owned by M. L. Campbell, bought of L. V. D. Tosh, with all future purchases by the party of the first part and placed in said stock."

This chattel mortgage was given to secure a note of $1,500 for the purchase of the drug stock, sundries, and all of the store fixtures. The purchase price of the stock and fixtures was $800, but at the request of the purchaser the note was given for $1,500, and the

sum of $700 was indorsed on the note at the date of its execution. The mortgagor paid nothing on the purchase of the drugs, and the note was for the goods actually purchased, and was secured by chattel mortgage. The mortgage provided that the stock of goods might be removed to another room or building situated in the same town, just on the opposite side of the street from where the goods were situated at the time of the sale. The note was payable one year after date, with interest. The mortgage contained the following covenants:

"And it is hereby mutually covenanted and agreed between the parties hereto, that if default be made in the payment of said sum of money or any part thereof, or interest thereof, according to the terms and effect of said note, when the same become due and payable, or upon a failure to conform to or comply with any of the conditions or agreements herein mentioned, the whole sum of money secured shall, at the option of the legal holder or holders thereof, become due and payable at once without notice. And it is further agreed, that in case of a sale or disposal or attempt to sell or dispose of the goods and chattels hereby mortgaged, or a removal of or attempt to remove the same from the county aforesaid, or an unreasonable depreciation in value, or if from any cause the security shall become inadequate, or the party of the second part shall deem himself insecure, then and thenceforth it shall be lawful for said party of the second part, his legal representatives, executors, administrators, or assigns, to enter upon the premises of the said party of the first part, or any other place or places wherein said goods and chattels aforesaid may be, to take, remove and dispose of the same, and all equity of redemption of the said party of the first part, at public auction or private sale, to the person or persons who shall offer the highest price for the same."

Within three days of the time the debt was due the plaintiff deemed himself insecure, and demanded of the defendant the possession of the stock of drugs, etc., under his chattel mortgage, and the defendant refused either to pay the debt or deliver up possession of the mortgaged property, and this action was commenced to obtain possession. Under the order of delivery, the deputy sheriff seized the stock of drugs, fixtures, etc., and, after holding them 24 hours, delivered them over to the possession of the plaintiff. The stock still remains in the possession of the mortgagee, and the matters in dispute are between the original mortgagor and the mortgagee. The rights of other parties were not involved as to the validity of the mortgage or any rights thereunder, at the time of the commencement of the suit in replevin.

It was claimed on the trial that subsequently to the replevin the defendant had sold and assigned all of his right to the drug stock, and all claims of damages arising out of the replevin suit, and on the trial evidence was offered to prove this fact, which was ruled out, and exceptions were taken to the ruling of the court. This is the first error complained of by plaintiff in error. The plaintiff offered to prove, by questions properly propounded to a witness on the stand, that since the commencement of this action the defendant in this case had sold and disposed of all his interest in and to the property described in the plaintiff's petition and in controversy in this action, and had assigned to other parties his right for damages against this plaintiff for the taking of the property, and that these parties to whom these rights and claims were assigned then had an action pending in the district court of Osage county, Kansas, against this plaintiff for the value of the property in controversy.

To the offer of the proof the defendant objected, as being incompetent, irrelevant, and immaterial.  The objection was sustained by the court and the plaintiff saved an exception thereto.  We think the court should have permitted plaintiff to prove, if such was the fact, that the defendant had, since the commencement of this action, parted with any or all interest he may have had in or to the property in controversy ; so that if, for any cause, the defendant was entitled to the possession of the property, or any part thereof, when the action was commenced, but for some reason his right to the possession had expired — been transferred, extinguished, or lost — at the time judgment is rendered, the defendant is not entitled to judgment for the return or for the value of the same.

In replevin, if the plaintiff fails to sustain his action, it becomes necessary to inquire into and determine whether or not the property shall be returned to the defendant, and this inquiry necessarily involves a determination of the title and right of possession as between the contending parties.  If on a trial of the rights of property or the right of possession thereto in an action of replevin it is shown that the defendant is the owner of the property, or has a right of possession thereto by reason of some special fact, a return of the property will be ordered, or, in case a return cannot be had, a judgment for the value thereof, or the value of the interest of the defendant therein, or the value of his right to the possession thereof.  It is a well-settled rule of law that a return of the property replevied will not be ordered when it is shown that it would be inequitable to return it to the defendant.

It is sometimes the case at the commencement of an action in replevin, that the defendant does not unlawfully detain the possession of the property, but

21—4 KAN. APP.

owns it, or has some pecuniary interest therein, and sometimes it may occur that the defendant at the commencement of the replevin suit had some interest in the property, but for some reason before the trial of the case the interest has terminated or been lost in some manner. In actions of replevin, where the property and the parties are before the court, the court should as far as possible adjust all equities which arise between the parties respecting the disposition of the property, determine all matters between them in relation to or growing out of the property, and should hear all testimony respecting the ownership or right of possession thereto, so as to render such judgment as shall do justice between the parties, not only as to the ownership or right of possession at the commencement of the action, but that the property may be disposed of by the judgment of the court so as to do no injustice to either party. (*City of Bath v. Miller*, 53 Me. 316.)

The final contention of counsel for plaintiff is that the court erred in the instructions to the jury, where it took the position — and so instructed the jury — that the property subsequently purchased by the mortgagor and added to and mingled with the mortgaged property by the mortgagor — even though the mortgage expressly provided that the mortgage lien should extend to and cover after-acquired property added to the stock of drugs, and that the mortgagee should be authorized to take possession of the same in case of condition broken in the mortgage, or in case he should deem himself insecure — became in no way subject to the mortgage lien, or under the dominion or control of the mortgage.

At common law nothing can be mortgaged that does not belong to the mortgagor at the time when

the mortgage is made. (*Pierce v. Emery*, 32 N. H. 484; *Cameron v. Marvin*, 26 Kan. 628.) Parties may make contracts with reference to future-acquired property to be added to and made a part of the property mortgaged, and the contract will be valid and binding between the parties, and if the future-acquired property is mingled with the property described in the mortgage, and is added to and becomes a part of the stock of goods mortgaged, and the rights of third persons have not intervened, it becomes a lien on all the property so intermingled and added to the mortgaged property. A mortgage of future additions to a stock of goods in a particular storeroom is a valid mortgage of such goods as fast as they are put into the storeroom by the mortgagor and become a part of the general stock covered by the mortgage.

The case of *Leland v. Collver*, 34 Mich. 421, was a suit in trover for the conversion of certain furniture that had been the stock in trade of the plaintiff. The defendant justified under a chattel mortgage which was given for the purchase-money of the stock of goods mentioned in it. The property mortgaged was set forth and described in the following terms:

"All the goods, wares, and merchandise, chattels and effects, mentioned and described in the schedule hereto annexed, and marked 'Schedule A,' this day bought of Illenden & Collver, thereby intending to convey all the present stock in trade as enumerated in said schedule, also, all the stock I may have from time to time in trade, as security for the above-named consideration, said goods to remain and continue in possession of the party of the first part, in the village of Three Rivers, Mich., except as they are disposed of in the usual course of retail trade; the party of the first part is to have the privilege of selling the goods for cash or on credit in the usual course of trade, and is to apply the proceeds of the sale in buying other

goods to keep up the stock and to support his family. The party of the first part covenants to keep up a stock of like goods to the value of $3,000, as security to the party of the second part, until the above amount, with interest, is paid, and also covenants to keep the stock insured to the amount of $2,000 for the benefit of the party of the second part, and as collateral thereto, and a breach of the last two covenants shall cause the whole sum secured to become due and payable.''

. Campbell, J., delivering the opinion of the court, says :

''In the present case the parties have seen fit to stipulate expressly that the body of the fund may be changed without losing its identity, and that the mortgage may deal with it as if unchanged. The various purchasers have made their purchases subject to this arrangement and are estopped from denying it. The mortgagees in taking the properly did only what Shnyder agreed they might do, and what the several purchasers also understood they were authorized to do.''

In the case of *Dalton v. Laudahn*, 27 Mich. 529, where the power was contained in a lease, it was further held that the agreement was valid and operative according to its terms. And no good reason occurs to show, and we think there is no satisfactory authority, why it should not be. Parties can, if they choose, make contracts of agency, bailment or other authority as broadly as they choose, where no legal policy and no paramount right intervenes before their enforcement. And if those agreements contain a license or permission to take possession and sell, no court can deny the validity of the possession and sale, if the parties are capable of contracting, and no other rights intervene.

Story, J., in delivering the opinion in the case of *Mitchell v. Winslow*, 2 Story, 630, says:

"It seems to me a clear result of all the authorities, that wherever the parties by their contract intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires title thereto, against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy."

The case of *Gregg v. Stanford*, 24 Ill. 20, was a bill in chancery by Hiram Stanford, in the Edgar circuit court, against William Snyder *et al.*, upon which an injunction was obtained to restrain the defendant William Snyder, as sheriff of Edgar county, from proceeding to sell 150 head of hogs upon which he had levied an execution issued by the clerk of the circuit court, upon an attachment obtained in said court by defendant Jacob Gregg against one M. S. Edmiston. The hogs were levied upon as the property of David Edmiston. The bill set out that the defendant Edmiston was largely indebted to the complainant for interest due on a note for $11,000 given for the purchase-money of a tract of land and divers small sums, amounting to $1,758.24, money advanced by the complainant to David Edmiston to purchase hogs, and that the complainant was under obligation to advance to Edmiston further sums for that purpose, making in all the sum of $5,000; also, that the complainant was the security of said Edmiston on a contract with Messrs. Powell, McEwing & Co., of Madison, Ind., to deliver to them 1,000 corn-fatted hogs by the 20th of December next, to fill which contract the money advanced and furnished by the complainant was to

be used for the purchase of hogs and corn and pasture to feed and fat the same ; and that, in order to secure the payment of said sums of money so advanced and said indebtedness of the said Edmiston, as well as to indemnify him as the security on said hog contract (which is filed as an exhibit with the bill), the said David Edmiston made and executed to the complainant a mortgage, which is made an exhibit and filed with the bill of complaint. The mortgage, as the consideration on which it is based, sets out the aforesaid indebtedness for the money advanced by the complainant to purchase hogs to fill the contract, and his liability as security upon said contract. The mortgaged property includes some real estate, a large amount of chattel property, and among other things the corn and hogs which the said Edmiston may purchase with the money advanced ; and is conditioned that it shall become absolute if the said Edmiston shall refuse to pay the $5,000 so advanced, with 10 per cent. interest thereon, and save the complainant harmless as his security on said hog contract, by delivering the hogs in accordance with the terms of the contract, and also apply all profits, or enough of them, arising from the hog contract, to the payment of the interest due on the note of $11,000. It also stipulates that Edmiston may retain the possession of the hogs purchased until the 1st of March, 1860, and if default is made, then the complainant may take possession and sell the property by advertising for 10 days. Breese, J., delivering the opinion of the court, says :

"We have examined with great care all the cases to which reference has been made on both sides, and we are by no means satisfied that the party cannot mortgage property to be acquired after the execution of the mortgage, provided the mortgage deed is properly executed, acknowledged, and recorded, or possession

taken of the property before any lien has attached; and that a court of equity will protect the mortgagee where the transaction is fair and honest.''

In the case of *Pennock v. Coe*, 23 How. 117, the bill was filed by Coe, who was mortgagee of the Cleveland, Zanesville & Cincinnati Railroad Company, in the circuit court of the United States for the northern district of Ohio, to enjoin the execution of a judgment recovered at law against the company by Pennock and Hart. The Cleveland, Zanesville & Cincinnati Railroad Company issued bonds to the amount of $500,000, payable 10 years after date, with interest coupons attached payable semiannually on the 1st days of April and October of each year, and to secure the payment of the same executed a mortgage on the railroad and its equipments to the complainant, in trust for the bondholders, the description of which is in words as follows:

''All the present and future-to-be-acquired property of the parties of the first part; that is to say, their road, made or to be made, including the right of way and the land occupied thereby, together with the superstructure and tracks thereon, and all rails and other materials used therein, or procured therefor with the above-described bonds, or the money obtained therefor, bridges, viaducts, culverts, fences, depots, grounds and buildings thereon, engines, tenders, cars, tools, machinery, materials, contracts, and all other personal property, right thereto, or interest therein, together with the tolls, rents or income to be had or levied therefrom, and all franchises, rights and privileges of the parties of the first part in, to or concerning the same.''

Nelson, J., delivering the opinion of the court, says:

'' The main argument urged against it is founded upon the maxim, that 'a person cannot grant a thing which he has not,' *ille non habet, non dat;* and many

authorities are referred to at law to prove the proposition, and many more might have been added from cases in equity, for equity, no more than law, can deny it. The thing itself is an impossibility. It may at once, therefore, be admitted, whenever a party undertakes, by deed or mortgage, to grant property, real or personal, *in presenti* which does not belong to him or has no existence, the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity.

"But the principle has no application to the case before us. The mortgage here does not undertake to grant, *in presenti*, property of the company not belonging to them or not in existence at the date of it, but carefully distinguishes between present property and that to be afterwards acquired. Portions of the road had been acquired and finished, and were in operation when the mortgage was given, upon which it is conceded it took effect; other portions were acquired afterwards, and especially the iron and other fixtures, besides the greater part of the rolling-stock.

"The terms of the grant or conveyance are: 'All present and future-to-be-acquired property of the parties of the first part'; that is to say, 'their road, made or to be made, and all rails and other materials, etc., including iron rails and equipments, procured, or to be procured,' etc. We have no occasion, therefore, of calling in question, much less denying, the soundness of the maxim so strongly urged against the effect of the mortgage upon the property in question, as its force and operation depend upon a different state of facts, and to which different principles are applicable. The inquiry here is, not whether a person can grant *in presenti* property not belonging to him, and not in existence, but whether the law will permit the grant or conveyance to take effect upon the property when it is brought into existence and belongs to the grantor, in fulfilment of an express agreement founded on a good and valuable consideration; and this when no rule of law is infringed or rights of a third party prejudiced. The locomotives and cars were all placed upon the road as early as February, 1854, when,

at the furthest, the mortgage attached to those in question, according to its terms, if at all, and the judgment of the defendant was not recovered till May, 1856."

In the case of *Galveston Rld. Co. v. Cowdrey*, 11 Wall. 473, Bradley, J., delivering the opinion of the court, says:

"As to the first point, without attempting to review the many authorities on the subject, it is sufficient to state that, in our judgment, the first, second and third deeds of trust or mortgages given by the Galveston Railroad Company to the trustees estop the company, and all persons claiming under it and in privity with it, from asserting that those deeds do not cover all the property and rights which they profess to cover. Had there been but one deed of trust, and had that been given before a shovel had been put into the ground towards constructing the railroad, yet if it assumed to convey and mortgage the railroad which the company was authorized by law to build, together with its superstructure, appurtenances, fixtures, and rolling-stock, these several items of property, as they came into existence, would become instantly attached to and covered by the deed, and would have fed the estoppel created thereby. No other rational or equitable rule can be adopted for such cases. To hold otherwise would render it necessary for a railroad company to borrow money in small parcels as sections of the road were completed and trust deeds could safely be given thereon. The practice of the country and its necessities are in coincidence with the rule. The precise case arose in New Jersey 30 years ago. The Morris Canal Company mortgaged its canal, appurtenances and chartered rights to secure a loan. When the mortgage was given one section of the canal, that between Newark and Jersey City, although authorized, was not constructed. It was constructed afterwards. Two other mortgages were given upon that part of the canal, one of which was held by the state of Indiana. A bill of foreclosure was filed on the first mortgage, and, after argument by very able counsel,

Chancellor Pennington held that the first mortgage took priority. The objection was raised that the company did not own any of the land on which the contested portion was constructed when the mortgage was given. ' Can it be possible,' said he, ' that if on the line of the route at any place it should turn out that a deed was obtained for a piece of land since the execution of the mortgage, that such part of the canal is not embraced within it?' ''

In the case of *Moody v. Wright*, 13 Metc. 17, Dewey, J., delivering the opinion, says :

"A stipulation that future-acquired property shall be holden as security for some present engagement is an executory agreement of such character that the creditor with whom it is made may, under it, take the property into his possession when it comes into existence and is the subject of transfer by his debtor, and hold it for his security ; and whenever he. does take it into his possession, before any attachment has been made of the same, or any alienation, such creditor, under his executory agreement, may hold the same ; but until such an act be done by him he has no title to the same ; and that such an act being done, and the possession thus aquired — the executory agreement of the debtor authorizing it — it will then become holden by the virtue of a valid lien or pledge. The executory agreement of the owner in such a case is a continuing agreement, so that when the creditor does take possession under it he acts lawfully, under the agreement of one having the disposing power ; and this makes the lien good. If, however, before taking possession, or doing such acts as are necessary to give validity to the mortgage, as to the subsequently acquire property, an attachment or assignment takes place, the opportunity for completing the lien is lost."

In the case of *Chapman v. Weimer*, 4 Ohio St. 486, it was held that a duly recorded mortgage of personal property, which expresses that the mortgagee may himself take possession of newly acquired property, the mortgagee acquires a valid lien under his mort-

gage without having the property actually delivered to him by the mortgagor.

In the case of *Cameron v. Marvin*, supra, which was an action in replevin to recover certain grain, flour, and other property, which had been levied upon by Marvin, as sheriff of Phillips county, plaintiffs claimed the right of possession under certain chattel mortgages. They took possession of the property under their chattel mortgages and also at the same time took possession of some other property belonging to the mortgagor, consisting of grain, flour, etc., which was mixed with the mortgaged property, but which the mortgagors did not have or own at the time of the execution of the mortgages. Plaintiffs claimed that they took possession of all this property not only under their chattel mortgages, but that they took possession of such additional property as additional security for their debt. VALENTINE, J., delivering the opinion of the court, says:

"Of course this property was not included in the mortgages at the time of their execution. In fact, it could not have been included in the mortgages at that time, for it was not within the power of any person to mortgage property which does not exist or which does not belong to him. He cannot mortgage property which is afterward to be acquired, or purchased, or procured. He can only mortgage property which at the time is in existence and to which he has a title. Parties may make contracts with reference to future-acquired property, and contracts which will be legal and valid and will be upheld; but such contracts do not constitute chattel mortgages. They are simply executory contracts, to be performed in the future: and while they are binding upon the parties making them, they are void as to third persons who have no notice respecting them. They can never be treated as chattel mortgages affecting third persons. Such contracts, however, are always held valid as though they

were chattel mortgages as against third persons who have not in the meantime obtained any specific interest in the property, when the mortgagee has obtained possession of the property under the contracts."

The evidence on the trial in this case shows that all of the property taken by the plaintiff which was not in the store and not owned by the defendant at the time the mortgage was executed, and included therein and covered thereby, was subsequently purchased by the defendant and placed in said mortgaged stock; that the defendant had been selling out of the stock of drugs from the time he first bought them, and from time to time added new drugs to the stock of drugs and drug sundries, and that he was simply keeping up or adding to the stock that he had purchased of the plaintiff, for which he had never paid the plaintiff any part of the purchase-money.

We think the chattel mortgage was valid; that it is a lien on all the drug stock and drug sundries that were in the store and owned by the defendant at the date of its execution, and that it became a lien on all of the subsequently acquired drugs, drug sundries, etc., as soon as they were purchased and added to the general stock in the store, and that plaintiff, on the breach of the conditions of the mortgage, or on his deeming himself insecure, had authority to take possession of the drug stock, drug sundries and fixtures then in the store, and to sell the same to pay his debt and cost of making such sale, and, on refusal of defendant to deliver up the property to plaintiff on demand, he had the right of possession — that he could maintain replevin for the recovery thereof.

The judgment of the district court is reversed, and the case remanded, with direction to set the judgment aside and grant a new trial.

All the Judges concurring.