83  165
87  292

## J. MAURICE FINN v. KATE DONAHOE.[1]

*Sale—Payment of purchase price—Chattel mortgage—Pledge—Bill of sale.*

1. An agreement by the vendee of a stock of goods to repay a loan, made to enable her to make the purchase, out of the first proceeds realized from the sale of the goods, and before the payment to the vendor of the balance of the purchase price, is not equivalent to an agreement to *secure* the loan by a chattel mortgage on the goods.

2. The *rights* of a vendor who takes possession of the property, with the consent of the vendee, under a bill of sale intended as security for the payment of the unpaid purchase money, and who is in such possession when the vendee executes a chattel mortgage to secure a pre-existing indebtedness, are superior to those of the mortgagee or of his assignee, although the bill of sale is not filed at the time of the execution and filing of the mortgage.

3. The rights of a pledgee in possession are superior to the lien of a mortgage given pending such possession.

   So *held*, where a vendor, in a contest with the assignee of a mortgage given by the vendee to secure a pre-existing indebtedness, claimed to have been placed in possession of the property by the vendee, with the right of control and disposition until one-half of the sum due on the purchase of the property was paid, as also certain other indebtedness of the vendee, and that she was in such possession when the mortgage was given. And it is held that the vendor's rights as a pledgee in possession would be superior to those of the mortgagee or his assignee, and would not be affected by the fact that the vendor had previously secured from the vendee a bill of sale of the goods, intended as security for the unpaid purchase money, which was void for fraud practiced by the vendor, and under which she claimed possession as well as under the later agreement and surrender of possession by the vendee.[2]

Error to Marquette. (Grant, J.) Argued October 17, 1890. Decided November 14, 1890.

[1] Rehearing granted at the January term, 1891.
[2] See *Rall v. Cook*, 77 Mich. 681.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Hayden & Young,* for appellant, contended:

1. It was admitted upon the trial by the plaintiff that he stood in the shoes of his assignor (citing *Judge v. Vogel,* 38 Mich. 568, and cases there cited), and that, the mortgage having been given to secure a pre-existing debt, the assignor was not a mortgagee in good faith and for a valuable consideration without notice; citing *Stone v. Welling,* 14 Mich. 514; *Boxheimer v. Gunn,* 24 Id. 372; *Chadwick v. Broadwell,* 27 Id. 6; *Bank v. Bates,* 120 U. S. 564; and therefore that the failure to file the Donahoe bill of sale (mortgage) would not make it subject to the Downing mortgage, but that it was a prior lien if executed without fraud and with no agreement that it should be subject to said mortgage.

2. If the bill of sale was void for fraud, the subsequent arrangement constituted a pledge of the stock, and as such became a prior lien to the Downing mortgage (citing *Cooper v. Ray,* 47 Ill. 53; 3 Pars. Cont. 241, 271; Jones, Pledges, §§ 7, 28, 48, 364, 365); it not being claimed that such arrangement was made by Mrs. Sutherland or accepted by Mrs. Donahoe with any intention to hinder or delay creditors, both of whom must join in such fraudulent intent to make the transaction void; citing *Hill v. Bowman,* 35 Mich. 191; *Loomis v. Smith,* 37 Id. 595; *Jordan v. White,* 38 Id. 253; *Andrews v. Fillmore,* 46 Id. 315; *Beurmann v. Van Buren,* 44 Id. 499; *Olmstead v. Mattison,* 45 Id. 617; nor can it be regarded as a conveyance of all the property of Mrs. Sutherland, and therefore fraudulent because in fact a general assignment to one creditor in fraud of the rights of the other creditors, as the intention clearly appears that the the title should not pass to Mrs. Donahoe, who was to return the property to Mrs. Sutherland as soon as she had collected a. specific amount from sales thereof.

3. In any case of doubt the law favors the presumption that the transaction is a pledge, rather than a conveyance; citing Jones, Pledges, § 14; and a delivery of property as security for a debt without a written conveyance cannot be a mortgage, but must be a pledge; citing Id. § 5.

4. If a mortgagee under a mortgage void as against creditors takes possession of the mortgaged property, and other property not included in the mortgage, under an agreement with the debtor that he should hold possession until the debt is paid, his title will be good as against subsequent attachments and execu-

tions by other creditors, by virtue of the contract of pledge and possession under it; citing Jones, Pledges, § 12; *Rowley v. Rice*, 10 Metc. 7; *Blakeslee v. Rossman*, 43 Wis. 127; Wait, Fraud. Cov. § 357.

5. A discrepancy between the real amount owing and that set forth in a mortgage is a badge of fraud. If the statement be intentionally false, it is an act of direct fraud; citing *Hawkins v. Alston*, 4 Ired. Eq. 137; *Willison v. Desenberg*, 41 Mich. 156; *King v. Hubbell*, 42 Id. 597.

*E. E. Osborn*, for plaintiff, contended as stated in the opinion, and further:

1. A pledge is defined to be a deposit of personal property as security, with an implied power of sale upon default; citing Jones, Pledges, § 1. No one of the different phases stated by the defendant constituted any such relation. She did not claim that the property was to be in her possession to be held by her until a certain sum should be repaid her, and the only construction of her evidence would be that she was to have possession for Mrs. Sutherland, and in her name, using the money that she took in for the payment of certain of Mrs. Sutherland's debts.

CHAMPLIN, C. J. The plaintiff replevied a stock of millinery goods from defendant, claiming title and right of possession under a chattel mortgage executed by Mrs. J. Sutherland to her father, John T. Downing.

Kate Donahoe had sold to Mrs. Sutherland her stock of millinery for $1,450. It is claimed by plaintiff that Mrs. Donahoe, then Miss McKenna, had agreed to take $500 down, and Mrs. Sutherland was to have two years to pay the balance, if she needed it; that Mrs. Sutherland had no ready money wherewith to make the down payment, and requested assistance from her father; and that it was agreed that for advancing such sum her father should receive his pay out of the first proceeds of the business, and before Miss McKenna, now Mrs. Donahoe, should be paid. It is further claimed by the plaintiff that Mrs. Sutherland was unacquainted with the business, and that Miss McKenna promised to come into the store and

assist during the busy season; and that she did so, and took more or less control over the business, and also assisted in the purchase of goods.

It is claimed by the defendant that soon after she sold to Mrs. Sutherland she obtained from her a bill of sale of the goods, which she held as security, but the same was not filed in the proper clerk's office until after the chattel mortgage was filed, under which the plaintiff claims. This mortgage bears date June 3, 1889, and it is claimed by plaintiff that it was given to secure the payment to Downing of the $500 which he advanced to his daughter when she purchased the goods. The mortgage was assigned to plaintiff on June 4, 1889, for $450. The mortgage was filed in the clerk's office, June 4; at 8 o'clock A. M., at which time the bill of sale had not been placed on file in the clerk's office. It was also claimed by Mrs. Sutherland that she never understandingly gave the bill of sale; that her signature was obtained by misrepresentation; and upon this point the testimony was conflicting.

The defendant claimed, and she introduced testimony which tended to prove, that she had purchased goods in Chicago for Mrs. Sutherland, and that her husband, Mr. Donahoe, had guaranteed the payment to the seller; that this bill amounted to something over $400, and the goods were placed in the stock in the store; that such guaranty was made necessary because the Chicago house refused to sell upon Mrs. Sutherland's credit. Defendant denies that she made any agreement when she sold the goods that. Mr. Downing was to be paid out of the first proceeds of the sales by Mrs. Sutherland, or that he should be paid before the purchase price due her should be paid. She testified that she sold the goods upon the agreement that $500 was to be paid down, one-half of the balance of $950 at the close of the first season after the sale,

which would end July 1, and the balance at the close of the next season's business, which would end about January 1, there being two seasons in a year in the millinery business; that, having purchased goods for Mrs. Sutherland guaranteed by ·her husband, she felt anxious that the business should be made to realize sufficient to pay for these goods and also the payment due her according to agreement; and that the arrangement was when she bought the goods that she should go into the store and stay there and assist Mrs. Sutherland until the bills were paid. In the month of May, she voluntarily went into the store and assisted Mrs. Sutherland in the business. After a little she took charge of the money received, and finally some dispute arose over money received, and defendant claims and testified, and in this she is supported by the testimony of her husband, that, on or about May 21, an agreement was made between her and Mrs. Sutherland, whereby Mrs. Sutherland surrendered to her the full possession and control of the goods and the business, and Mrs. Sutherland was not to have anything more to do with the goods or business until Mrs. Donahoe, in carrying on the business, had realized sufficient to pay the Chicago bill, and one-half the balance of the purchase money due ` her; that thereupon Mrs. Sutherland surrendered the store and goods to her, and left the store, and she took and had absolute possession under the arrangement; that she took possession both under the bill of sale and under the arrangement made last as aforesaid; and that she so continued in possession and carried on the business until the goods were seized under the writ. Mrs. Sutherland denies that such arrangement was made, or that she surrendered up possession of the goods to Mrs. Donahoe.

Under the conflicting testimony in the case, the jury had the difficult duty to perform of reconciling the testi-

mony so as to be in harmony with the truth, as it should appear to them, if possible; if not possible, then to determine what facts were established by a preponderance of the testimony in plaintiff's favor upon the material points in issue.   The circuit ·judge charged the jury, laying before them the respective claims and theories of the parties; and, in stating the plaintiff's claim, he said:

" They disagree as to another important element in the contract, which will be a question of fact for you to decide.   Mrs. Sutherland, and the plaintiff acting through her, claim that a part of that agreement was this:   That she informed Miss McKenna, now the defendant, Mrs. Donahoe, that she was to obtain $500 from her father, and that it was a part of the agreement then and there made at the time of the sale and transfer that she, Mrs. Sutherland, out of the proceeds of the sales of the property by the carrying on of the business, was to pay her father the $500 first, and that Miss McKenna's, now the defendant's, rights were to be subject to the payment of that five hundred dollars.   This the defendant denies.

" Now I charge you, gentlemen, that if you find, from the evidence in this case, that the agreement was between these parties at that time that Mrs. Sutherland was to pay her father the $500 before paying the defendant, then the plaintiff is entitled to recover in this case; for the mortgage under which he claims the right to recover was one given by Mrs. Sutherland in pursuance of that agreement to her father, and by her father assigned to the plaintiff in this case, and he would succeed in that event to the rights of the father.   Now that is a question of fact for you to determine."

The fourth assignment of error relates to this portion of the charge.   The court later on charged the jury that the plaintiff had no greater rights than Mr. Downing would have had if he had not assigned the mortgage, and that the plaintiff did not occupy the position of a purchaser in good faith of negotiable paper; that the question of the *bona fides* of the transaction by which the mortgage was given and assigned was not in the case, but

the plaintiff's right to replevin the goods depended upon the agreement testified to by Mrs. Sutherland, and embraced in that portion of the charge above given.

Was the instruction, as matter of law, correct? There was no agreement that Downing should have a lien upon the goods; none that he should be secured by mortgage upon the stock of goods; no agreement as to what time his advances should be paid; there was no agreement that he should have a mortgage payable in one year,—but a mere personal agreement that Mrs. Sutherland was to pay her father $500 before paying the defendant out of the proceeds of sales of the property in carrying on the business. Is this equivalent to an agreement to give her father a mortgage upon the stock of goods? One is a personal covenant, for which an action at law would lie, if broken, without any lien upon the goods; the other is a specific lien upon the goods, and places it in the control of the party to take possession at any time when he may deem himself insecure.

I do not think the agreement testified to was equivalent to an agreement to give a chattel mortgage, nor that the execution of the mortgage under which the plaintiff claims was given in pursuance of such agreement. The mortgage must stand and be determined by the relation of the parties at the time of its inception. It was given to secure the payment of an existing indebtedness, and whether it should have precedence over the rights of defendant must depend upon what her rights were. That she was in possession of the goods at the time of the replevin, there can be no doubt. She claims that she was in possession not only under the agreement of May 21, but also under her bill of sale, and that she obtained such possession by the consent of Mrs. Sutherland. Whatever rights she has, as against

the plaintiff, must rest upon the right she had to take and hold possession. If she went into possession under her bill of sale, with the consent of Mrs. Sutherland, and was in such possession when the chattel mortgage was executed, then her rights are superior to mortgagee's, or his assignee's, and it makes no difference that the bill of sale was not on file. Jones, Pledges, § 12; Jones, Chat. Mortg. §§ 167, 168; *Cameron v. Marvin*, 26 Kan. 612, 629; *Pettee v. Dustin*, 58 N. H. 309.

If the stock of goods was placed in her actual possession and control, with the right of disposition to pay the Chicago debt and one-half of the debt due her, and such possession, control, and right of disposition were assented to by Mrs. Sutherland, previous to the execution of the mortgage, then she was a pledgee in possession, and her rights would be superior to a lien or mortgage created while she was in such possession. And this would be the law even if the bill of sale was void as having been obtained by fraud and imposition. The instructions as to the validity of the bill of sale having been obtained by fraud and misrepresentations were correct. If the jury should find it was so obtained, defendant cannot claim any rights under it, of possession or otherwise.

There must be a new trial, in which the plaintiff's rights will depend upon the rights of the assignee of a chattel mortgage given for an existing debt, and the existence of such debt will be open to inquiry. The defendant's rights will depend first upon the validity of her bill of sale as a security, and a possession taken thereunder by consent of Mrs. Sutherland, or, second, upon an agreement by which the goods were placed in her hands with the right of control and disposition until the Chicago debt and one-half of the debt owing to her

by Mrs. Sutherland shall be paid, and her actual possession of the goods for that purpose at the time the mortgage was given.

The judgment must be reversed, and a new trial ordered.

CAHILL and LONG, JJ., concurred. MORSE and GRANT, JJ., did not sit.